Up to this point in time, international air carriers have been completely absolved of all responsibility for their failures to provide vital health information to passengers, fair paying passengers who pay a fee to be transported from one place to another, presumably under safe circumstances. There has been some suggestion in the opinions that if there is a standard or a policy in effect that the airline should provide this information, then perhaps under those circumstances, although there has been no definitive ruling yet, perhaps under those circumstances an Article 17 accident may be found to exist for an airline's violation or failure to comply with that standard or policy. The problem with using standard and policy language is, I think, twofold. Number one, it violates, really, instructions that we have received from the Supreme Court in both Sachs and Hussein that we really should not inject common law principles into the evaluation of what is contained within a treaty. Secondly, is that by airlines ignoring a risk and by simply not developing a standard or a policy, which is in fact what has occurred in some instances here in the cases before you, then the airline can itself absolve itself from all responsibility for their failure to impart that vital information. So there are two problems there. But nonetheless, given the language that we have in the cases from Rodriguez through Kaman, we have to speak at least in some respects about a standard or a policy. So up to this point, what are we left with after Kaman? In Kaman, we heard that, once again, the development of a two-cabin flight license just as a result of a passenger's exposure to cabin environment will not in and of itself be considered an accident. I take issue with that, but I think the thrust of this case here is on the second prong. And the second prong, at least as has been argued by Paliz, is that there are no circumstances under which a carrier's failure to provide a warning to a fair-paying passenger, even if that warning relates to a health or safety issue, will provide liability as an accident under the Warsaw Act. In essence, what they say is Kaman tells us that even if we have information about a risk to a passenger, if we decide not to give that information to the passenger and the passenger becomes injured as a result, we're not going to be injured because of that. That's what Kaman says. Kaman does say that. But I believe Kaman can only be understood within the context of the information and the facts and really the holding of Kaman itself. Kaman did not anywhere address any of the standards, if you will, any of the policies, perhaps, that were issued by the Fed. I thought you were going to put that aside. You're not putting that aside. Well, I am putting no, I am not putting no, the standards aside? No, because we do have what might be considered a standard or a policy or a directive from the trade organizations, IATA, from the Aerospace Medical Association, even from the House of Lords, that passengers should be provided with the warning. Let me just ask the pejorative question. So what? I mean, you know, so you've got a bunch of public agencies, consumer interest groups, legislative bodies, whatever, who say a variety of things on the subject. So? Well, but here they're uniform in saying, carriers, you should provide this information to your passengers. Okay. I suppose that's true. Suppose they just say, dadgummit, airlines, this is crystal clear, say something. Well, I think the So what? We forget that we're dealing in the context of the Warsaw Treaty. And the Warsaw Treaty is probably old-fashioned, deficient, ought to be abrogated, ought to be changed. But if you can't bring it within the Warsaw Treaty, you might as well go home. Well, and that's correct. And so the way the courts have given the Warsaw Treaty life in the present, in these that occur during the course of a flight, they speak in terms of, has there been a request for assistance from the airlines? And I think perhaps they're maybe really stretching it to go that far. Well, but nonetheless, that's what we're left. The Supreme Court has said, if there is a request for assistance, and that request for assistance is ignored, then perhaps you have the circumstances for an Article 17 accident. And so what we have here is we have requests. It may not be from the passenger, but we have requests from international bodies that carriers serving the international traveling public should provide this information to their passengers. There is a request. The fact that it doesn't come from the passenger is, I would submit, irrelevant. I mean, and obviously there's no case to that effect. There is no case to that specific effect because we're arguing this for the first time here, Your Honor. Yeah, well, maybe there's not one because it just doesn't compute. Well, but perhaps it really does compute if you really take a look at a flexible interpretation of the Act, and you take a look at any injury as being a chain of circumstances, one of which being, in this case, a decision not to provide what apparently all of the international bodies suggest should be provided to the passengers, and that is information. In fact, some of the airlines have even attempted to provide information, acknowledging that, you know, maybe we ought to give some of this information to the passengers, but they do so in such a way that the information does not get to the passenger. It is not received by the passenger. That is the accident here. It is not the decision not to provide information. It is the fact that the passenger does not receive information. No, but if you don't have an obligation to provide it, you certainly don't have one to provide it effectively. It's not a question of an obligation to provide it at all. It's just whether or not you can take a look at an expectation from the passenger that if there is a risk and if the carrier has been told by governing bodies to provide that information and they don't get it, whether it's because they didn't, the carriers decided not to provide it or whether it was hidden, then that is an accident. The non-receipt of that information was an accident. The carriers can say, well, we gave it to them. We hid it in the back of a magazine. We put it on a video that if you know where to look and why to look for it, you might be able to access it. But that's an Article 20 response to what is the accident here. And the accident here is the non-receipt by the passenger of this information. And why is it unexpected or unusual from the standpoint of the passenger? It's because these international bodies are telling the airlines to provide this information, and yet it is not provided. So that is the distinction, I think, here between the Kaman case and the prior cases and the circumstances here. Here we do have the evidence of the request, if you will, the directives, the suggestions, the recommendations from the international bodies that this information be provided. You have, then, the evidence that it was not received by the passenger and injuries resulted. So here you do have, under the rubric, if you will, of a request and an intentional decision not to comply with that request and an injury resulting, you do have the facts to support an accident. In your perfect world, if, in fact, somebody suffers a deep vein thrombosis and they heard from their doctor that they should watch long flights in which they do not get up and walk around and so on and so forth, but the airline never gave the information, is that an accident? Absolutely, it's an accident because of the failure of the airline. What can the person do about it? Well, under the Article 20 evaluation of whether all reasonable measures have been taken under these particular circumstances, the airlines can raise that because you can raise reasonableness under that particular set of circumstances. But in the first instance, did the passenger receive that information? The answer is no, and that is why it is an accident. But I just, the facts I gave you is that the passenger did receive it, but not from the airline. That's correct. And that's why, but in the first instance, the question is, is the airline potentially liable? And the answer would be yes, because it did not provide the information. Is it ultimately liable? Perhaps no, depending upon how the facts play out under the Article 20 evaluation of whether the airline under those particular circumstances acted reasonably and whether that particular passenger can claim to the contrary. And I would suggest under those circumstances, perhaps not. But the first hurdle is reached. When the airline does not provide and the passenger does not receive, this is the information that the airline has been requested to give. That's the accident. That is the accident. Even though the passenger has the information, the accident is he didn't receive it from the airline. That is correct. Under the Act, under the treaty, that's when we look at what has the airline done. I just want to make sure that I understand you right. It is. It is the failure of the passenger to receive that which the airline has been directed to give. That is the direction being equivalent to a request and then the noncompliance with that request being an act of commission, if you will, under come on, if you want to use the act and omission rubric, or just the accident, the unexpected or unusual event. If it please the Court, I will take the rest of my time in rebuttal. Surely. May it please the Court. My name is Clem Trishler. I am here today presenting argument on behalf of 15 airline appellees in this appeal from the grant of summary judgment by Judge Walker. Mr. Margo, my colleague, is here to present argument on behalf of some of the remaining appellees, and I have agreed to reserve certain time for him. With all due respect to Mr. Robbins and his vigorous advocacy, this is not the first time that this Court has been presented with this issue. I submit that this Court should affirm the well-reasoned decision of the another circuit and sister signatories to the Warsaw Convention who have all uniformly held that the failure to warn of the risk of DVT is not an accident under Article 17 of the Convention. The come on decision is controlling. In come on, this Court held that the failure to warn of the risk of DVT is not an event. The Court looked at the definition of an accident as applied by the United States Supreme Court or as given by the United States Supreme Court in Air France v. Saks, which requires that there be an unusual or unexpected event external to the passenger. This Court in come on held that the failure to warn is not an event. What the plaintiffs have done here in connection with this appeal is to on and try to rephrase those arguments as a failure or of a request to give a warning as opposed to a failure to warn. They call it now a request to give warnings that were not heeded as opposed to a failure to warn. It's the same book with a different cover. In the record which we submitted to this Court and in the brief which we submitted to this Court, we go to some lengths to demonstrate that the same evidence which the plaintiffs are now saying the airlines ignored, the IATA statement that was issued by the International Air Transport Association in 2001, the House of Lords reports, all that evidence was presented in both the in 2006. This Court examined all of that evidence and held that a failure to give a DVT warning is simply not an event and does not trigger liability under Article 17 of the Warsaw Convention. I would ask this Court to look at the issues in this appeal through the lens of precedent. If you start with the Rodriguez decision where this Court held that the DVT warning of itself is not an accident, that decision is followed by the Kaman decision where this Court specifically addressed the question that was left unanswered by Rodriguez, and that is whether the failure to warn of the risk of DVT could be an accident. This Court said no, there is no event. The Blansett decision from the Fifth Circuit approaches it from a little different perspective, but again, the Fifth Circuit Court of Appeals held that failure to warn is not unusual or unexpected, and so there can be no liability under Article 17. And I also think that it's worth mentioning that sister signatories to the Warsaw Convention, again, have all held that there is no accident. If there are no questions from the Board, I'm happy to turn over to Mr. Margot. Okay. Mr. Margot. Good morning, Your Honor. May it please the Court. My name is Rod Margot. I'm representing six of the carrier defendants in this litigation, namely Singapore Airlines, LL Israel Airlines, KLM Royal Dutch Airlines, Air New Zealand, Lufthansa  I'm here to speak on behalf of the carrier defendants. I am in full agreement with the comments that Mr. Chisholm has made to the Court. I'm rather surprised at some of the comments I heard from Mr. Robbins earlier that provided there's been a request for assistance which has been ignored, then there is a claim, and then he refers to the request from international air transport association which was simply a vague commentary that it would be appropriate for airlines to warn their passengers about the possibility of deep vein thrombosis, but of course that has nothing to do with the Warsaw Convention and the requirements under Article 17 which I think have been very clearly laid out by this litigation. I think it's also very clear that the decision that came in is consistent with that of the Fifth Circuit in Blanchard v. Continental, and I was going to say that all of the cases which the plaintiffs and appellants have relied upon, namely Hussein in Olympic, Prescott in AMR, and Phillip v. Malev, are all very distinguishable on their case, which is a simple failure to warn of the possibility of suffering DVT on an international flight, and clearly that does not amount to an accident for purposes of Warsaw when one looks at the definition of an accident under SACS v. Air France which was given by the U.S. Supreme Court that requires an unexpected or unusual event which is an accident. I would simply refer to a short quote from Lord Mance in the House of Lords in the deep vein thrombosis and air travel group litigation matter in which Lord Mance who was quoting Lord Phillips who was at the time the master of the roles in the Court of Appeal as follows, often a failure to act results in an accident or forms part of a series of acts or omissions which together constitute an accident. In such circumstances it may not be easy to distinguish between acts and omissions. I cannot see, however, how inaction itself can ever properly be described as an accident. It is not an event. It is a non-event. Inaction is the antithesis of an accident. And with that, Your Honor, I'll rest. Thank you. Thank you, Mr. Margo. Mr. Robbins. I fortunately or unfortunately know quite a bit about the factual basis for both the arguments in Rodriguez and Kaman. And what I can say categorically is that Rodriguez did not contain any reference to the IATA directives. Kaman, the evidence was stricken that I had presented concerning the IATA directives. So neither opinion addresses these international directives. And when I say international, I do mean international. IATA is an international agency. The House of Lords, I would submit, is international. And they have the directive that those airlines under their control should give meaningful DVT information to their passengers. And the Aerospace Medical Association has participants from international air carriers that are members of that. And that also has a directive, quite extensive directive, that suggests that we're rehashing roads that have been hashed before, I don't think is entirely fair, nor is it in any way correct. Here we do have the facts that were not addressed in any of the courts, including Blancet, of these international directives. And within the context of Hussein, then, it is requested that those international directives be looked at. And I'm sure the Court has, of what Judge Scott in the DVT litigation had to say. And that is under circumstances not there presented because the matrix of facts in both the, before both the House of Lords and the Australian High Court did not have the international directives that this Court has before it. So within those contexts, Judge Scott said, Lord Scott said, and as that was echoed by Lord Kirby in the Australian Court, that under circumstances where you can show a standard, where you can show here a request, then perhaps under those circumstances something would be different, that perhaps that would fit the requirements for an accident under the Warsaw Act. Counselor, you tell us about the folks in the House of Lords made a directive to all of the people under it, all the airlines. Has the House of Lords thereafter determined that a deep vein thrombosis in these circumstances wasn't the result of this accident? There has been no opinion from the House of Lords since the NRA DVT litigation. The House of Lords has not yet been presented with the issues that we present in this Court. Any of the lower courts in those, in those cases, in those countries, have they ever said there was an accident? The matrix of facts in both Australia and England were the same, and there was nothing presented concerning the IATA or the AMA or the House of Lords directions. As a matter of fact, the House of Lords directives occurred after the matrix of facts. I agree. All right. So it's after. All right. Now, from that point forward, has there ever been a case which says it's an accident? Not until this one. Ah. Okay. Because it has not been presented to the Court in the way that this Court is being presented with the facts here. So based upon the facts that we have presented here, the distinguishing factor these facts have as compared to Kaman, Rodriguez, DVT, or POVI, I would request that the Court undertake that evaluation under Hussain, recognize these directives as being requests, and recognize that the failure of the passengers to receive that which has been requested that they receive is an accident under the Warsaw Act. Submit it, Your Honor. Okay. Thank you, Mr. Roberts. Thank you, counsel. The matter just argued will be submitted in the Courtroom. Stand in recess for the day. Thank you, Your Honor.
judges: Fletcher, Rymer, Duffy